Docusign Envelope ID: 6B3FD742-A991-4E39-AE8E-8A9CC24CD7CA

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANA CARDOSO, individually and on behalf of others similarly situated, | Case No. 2:24-cv-09756 (ES) (SDA) |
| *Plaintiff(s)* | |
| vs. | |
| OLIVIA ROSE ENTERPRISES INC. (DBA I LOVE NY) and CEZAR MIZRAHI, | |
| *Defendant(s).* | |

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This Settlement Agreement and Mutual Release (the "<u>Agreement</u>") is made as of the <u>18th</u> day of August, 2025 by and between Plaintiff Ana Cardoso ("Plaintiff"), and OLIVIA ROSE ENTERPRISES INC. (DBA I LOVE NY) and CEZAR MIZRAHI ("Defendants").  Plaintiff and Defendants are referred to herein in the singular as a "Party" and collectively in the plural as the "Parties".

WHEREAS, Plaintiff alleges that she was employed by Defendants as a "Salesperson" from approximately February 2023 until her termination on or about October 3, 2024; and

WHEREAS, Plaintiff has asserted certain wage and hour claims against Defendants in connection with her employment under numerous theories of law; and

WHEREAS, Defendants deny each and every allegation made by Plaintiff, and

WHEREAS, the Parties have reached a binding, global, settlement of any and all claims relating to Plaintiff's employment and relationship with Defendants in lieu of incurring the time, effort and expense of litigating Plaintiff's claims and Defendants' defenses thereto; and

WHEREAS, the Parties have agreed to enter into this Agreement to memorialize their agreement to conclusively settle and amicably resolve any and all claims and issues related to Plaintiff's employment with Defendants, including her wage and hour claims thereof, and the Parties have agreed to release one another from any and all claims, whether known or unknown, related to Plaintiff's employment with Defendants upon the terms and conditions set forth herein

{41139062:1}

below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between Plaintiff and Plaintiff that in consideration of the mutual releases, covenants, conditions and consideration contained herein, the sufficiency of which is hereby acknowledged by the Parties, all issues between the Parties be and hereby are settled with prejudice on the following terms and conditions:

1. <u>Settlement Amount; Tax Consequences</u>.

(a) <u>Settlement Amount</u>. In exchange for Plaintiff's agreement to be bound by the terms of this Agreement, including without limitation, the confidentiality and non-disparagement obligations set forth in Sections 18 and 19 hereof, Defendants have agreed to pay and Plaintiff agrees to accept a total of Twenty Thousand Dollars ($20,000.00) to conclusively settle and resolve any and all claims she may have against Defendants relating directly or indirectly to her employment and her claims for violations of any and all applicable wage and hour statutes and regulations under the law(s) of the United States and/or the State of New Jersey, and for counsel fees:

(i) Initial payment to Plaintiff of Nine Thousand Two Hundred Seventeen and 50/100 Cents ($9,217.50), less standard and appropriate withholdings and deductions for federal and state taxes (*i.e.* payment to be processed as a W-2 payroll check) ("Initial Payment") as payment for Plaintiff's alleged unpaid wages;

(ii) Remaining Payments to Plaintiff of Six Hundred Sixty-Six and 70/100 Cents ($666.70), less standard and appropriate withholdings and deductions for federal and state taxes (i.e. payment to be processed as a W-2 payroll check), every thirty (30) days following the Initial Payment to Plaintiff until the Settlement Amount is paid in full ("Remaining Payments").

(iii) <u>Attorney's Fees and Costs</u>. Payment to Stillman Legal, P.C. of Seven Thousand Four Hundred Forty-Nine Dollars ($7,449.00) (payable *via* 1099) as reimbursement of Plaintiff's legal costs and fees, which shall be paid as follows:

1. First payment to be made in the amount of Five Thousand Seven Hundred Eighty-Two and 50/100 Dollars ($5,782.50), to be provided at the same time and manner as the Initial Payment;

2. Remaining payments to be made in the amount of Three Hundred Thirty-Three and 30/100 Dollars ($333.30), to be provided at the same time and manner as the Remaining Payments.

The payments set forth in ¶¶1(a)(i)-(iii) immediately above, totaling Twenty Thousand Dollars and 00/100 Cents ($20,000.00), shall constitute the total penal sum and final monetary consideration to be paid between the Parties hereunder and are collectively referred to herein as the "<u>Settlement Amount</u>".

(b)     Defendants shall forward the payments under ¶1(a) above directly to Stillman Legal, P.C. 42 Broadway, 12th Floor, New York, New York 10004 via recognized overnight courier (*e.g.* FedEx, UPS, USPS) within the time provided therein.

(c)     The Settlement Amount is being tendered by Defendants in full satisfaction of any and all claims that Plaintiff has asserted or could assert in connection with or arising out of her employment with Defendants or any of their affiliates, and any events occurring on or prior to the Effective Date of this Agreement, including specifically any and all claims for attorneys' fees. As a condition precedent to making such payment, Stillman Legal, P.C. and Plaintiff shall each provide Defendants with a W-4 and any other information reasonably necessary in order for Defendants to make the payment provided for herein. For tax year 2025, an IRS Form 1099-MISC shall be issued to Stillman Legal, P.C by Defendants at the appropriate time with respect to the $7,449.00 payment provided for in ¶1(a)(iii) above and an IRS Form W-2 shall be issued to Plaintiff by Defendants at the appropriate time with respect to all moneys paid to her hereunder.

(d)     Defendants' obligation to pay the Settlement Amount shall be conditioned upon Plaintiff not serving notice of revocation as provided in ¶6(d) infra.

(e)     The Initial Payment of the Settlement Amount shall be paid within 30 days from the date that Defendants receive each of the following, all of which constitute conditions precedent to funding the Settlement Amount:  (i) this Agreement as fully executed by Plaintiff (and provided that she has not revoked it within the seven (7) day period set forth in ¶6 below); (ii) completed and duly-executed IRS Forms W-9 from Plaintiff and Stillman Legal, P.C.; and (iii) a completed child support judgment search/certification for Plaintiff as required by N.J.S.A. §2A:17-56.23b.  The provisions of this paragraph constitute the entire payment and thing of value to Plaintiff, which she will receive from Defendants.

(f)     Plaintiff agrees that except as provided herein, she is not entitled to any future or additional payments from Defendants whatsoever in connection with her prior employment or the termination thereof.

(f)     <u>Tax Consequences</u>. Plaintiff understands and agrees that she is solely responsible for satisfying any and all taxes that she owes as a result of payment of the Settlement Amount, except as otherwise outlined herein. Plaintiff expressly acknowledges and affirms that she has not received any tax advice from Defendants or their attorneys as to the Settlement Amount and that Defendants recommend that she seek her own tax guidance from an appropriate professional.  Regardless, Plaintiff agrees to be responsible for her own tax obligations arising from the portions of the Settlement Amount allocated to her, while Defendants shall remain responsible for all employer-side tax obligations and proper tax reporting.This indemnification and hold harmless shall not apply to any tax obligation that belongs to Defendants for any required employer contribution for any part of the Settlement Amount that is deemed to be wages, if any. The Parties further agree that Plaintiff will give Defendants notice of any tax liability or penalty assessed against Defendants in connection with the Settlement Amount, and Plaintiff will fully cooperate with Defendants in the defense of such claim and pay all penalties at her sole expense.

2.  <u>No Admission of Wrongdoing</u>.

(a) The Parties agree that this Agreement and compliance with same shall not be construed as an admission as to the truth or correctness of any allegation or claim against them, or of fault or liability by them, or an adjudication or finding on the merits of Plaintiff's claims or Defendants' defenses thereto or for any counterclaims that Defendants could assert against Plaintiff, including claims for malicious prosecution, frivolous litigation under the New Jersey Court Rules and abuse of process;

(b) The Parties further acknowledge and agree that nothing contained in this Agreement, nor any representation, warranty or consideration provided pursuant to this Agreement or the acts taken hereunder, shall be deemed or construed either: (i) as an admission of truth, correctness, fault or liability or of any violation of any applicable law, statute, ordinance, order, regulation, or constitution of any kind; or (ii) to establish that there was any fault or liability of any violation of any applicable law, statute, ordinance, order, regulation, or constitution of any kind;

(c) Defendants expressly deny the truth and veracity of Plaintiff's allegations. Defendants have agreed to settle with Plaintiff based on a reasonable business decision that the cost and expense of engaging in a lawsuit will exceed the Settlement Amount and, therefore, finality and certainty concerning Plaintiff's employment by way of settlement is the preferred result; and

(d) The Parties further acknowledge and agree that this Agreement shall have no precedential effect for any purpose other than to enforce its terms.

3.  <u>Release by Defendants</u>. For good and valuable consideration, the receipt of which is hereby acknowledged, Defendants hereby releases and forever discharges Plaintiff and her respective predecessors, successors, heirs and representatives from and against all actions, causes of action, claims, counterclaims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether known or unknown, whether based in tort, contract, statutory, or other theories of recovery, whether at law or in equity, whether before a local, state or federal court or administrative agency, arbitrator, tribunal, or commission regardless of location, or whether under local, state, federal or common law that Defendants now has or may have had, or hereafter may claim to have against Plaintiff for anything that has occurred from the beginning of time up to and including the Effective Date of this Agreement (<u>see</u> ¶6(d) <u>infra</u>) , including any and all claims for attorney's fees, costs, interest or other expenses, or on any other basis that Defendants have or have had in connection with Plaintiff's employment and for any events or actions occurring on or prior to the Effective Date of this Agreement.

4.  <u>Release by Plaintiff</u>. (a) Plaintiff, on behalf of herself and her, executors, administrator, heirs, agents and representatives hereby irrevocably and unconditionally waives, releases and forever discharges Defendants and their predecessors, successors, heirs and representatives, their agents, assigns, in-house attorneys, benefits plans, board of directors, trustees, directors, members, employees, executives, independent contractors, employment liability insurers, managers, officers, owners, parent companies, partners, predecessors, related entities, representatives, and subsidiaries, (collectively referred to herein as the "<u>Releasees</u>") from

any and all claims, demands, judgments or causes of action of every nature or description, whether known or unknown or which could have been known through reasonable diligence as of the Effective Date, whether based on tort, contract, statutory, or other theories of recovery for anything that has occurred from the beginning of time up to and including the Effective Date of this Agreement (see ¶6(d) infra), including any and all claims for attorney's fees, costs, interest or other expenses, or on any other basis that Plaintiff has or has had or may claim to have.  Such claims include those Plaintiff may have or has had against Defendants on or prior to the Effective Date of this Agreement.

      Specifically, the claims released by Plaintiff include, but are not limited to:

    i.    All statutory claims including, but not limited to, claims arising under (1) the federal and state Family and Medical Leave Acts; (2) the Older Worker Benefit Protection Act of 1990; (3) the Civil Rights Act of 1866; (4) the Americans with Disabilities Act; (5) New Jersey Law Against Discrimination; (6) federal and state equal pay laws; (7) New Jersey Conscientious Employee Protection Act; (8) Genetic Information Non-Discrimination Act; (9) claims under Fair Credit Reporting Act; (10) Fair Labor Standards Act; (11) the Consolidated Omnibus Budget Reconsideration Act; (12) the Immigration Reform Control Act; (13) the Occupational Safety and Health Act; (14) New Jersey Family Leave Act; (15) Title VII of the Civil Rights Act of 1964; (16) the Age Discrimination in Employment Act; (17) the Americans with Disabilities Act; (18) The Family and Medical Leave Act; (19) the Sarbanes-Oxley Act of 2002; (20) the Employee Retirement Income Security Act; (21) the Lilly Ledbetter Fair Pay Act; (22) the Genetic Information Non-Discrimination Act; (23) New Jersey Wage and Hour Law and Wage Payment Laws; (24) the National Labor Relations Act; (25) claims for retaliation; (26) claims for retaliation pursuant to the New Jersey Workers' Compensation Act; (27) the New Jersey Civil Rights Act; (28) the New Jersey Civil Union Law; (29) the New Jersey Domestic Partnership Act; (30) the New Jersey Security and Financial Empowerment Act; and (31) the Families First Coronavirus Response Act;

    ii.    All claims arising under the United States and New Jersey Constitutions;

    iii.    All claims arising under any Executive Order or derived from or base upon any state and/or federal regulations;

    iv.    All common law claims including, but not limited to, claims for wrongful discharge, violation of public policy, retaliation, aiding and abetting, negligent hiring, supervision or retention, negligent investigation, breach of an express or implied contract, breach of an implied covenant of good faith and fair dealing, bad faith, fraud, fraudulent inducement, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, invasion of privacy, conspiracy, loss of consortium, tortious

     interference with contract or prospective economic advantage, unjust enrichment, promissory estoppel, detrimental reliance, equitable estoppel, negligent misrepresentation, malicious misrepresentation, malicious prosecution, malicious use of process, false arrest, false imprisonment, pima facie tort, any tort claim, and negligence;

 v. All claims for any compensation including, but not limited to, back wages, lost wages, front pay, continued pay increases, paid time off, overtime pay, commissions, vacation pay, any type of bonuses or awards, management incentive plan awards, fringe benefits, insurance benefits, pension plans, savings plans, severance pay or other severance benefits, reinstatement, tuition reimbursement, retroactive seniority, pension benefits, stock options, stock purchase plans, contributions to 401(k) plans or any other form of economic loss, whether or not subject to ERISA;

 vi. All claims for personal injury, including physical injury, mental anguish, emotional distress, pain and suffering, embarrassment, humiliation, damage to name or reputation, liquidated damages and punitive damages; and

 vii. All claims for cost, interest and attorneys' fees.

  (b) To the extent not inconsistent with United States Equal Employment Opportunity commission ("EEOC") Enforcement Guidance or Non-Waivable Employee Rights under EEOC-Enforced Statutes dated April 11, 1997, and to the fullest extent permitted by law, Plaintiff shall not sue in any jurisdiction or file a charge, complaint, grievance, or demand for arbitration against Defendants regarding any claims that arose prior to and are known or should have been known as of the Effective Date of this Agreement (see ¶6(d) infra), unless required to do so by Court order, subpoena or other directive by a Court, administrative agency, arbitration panel or legislative body, or unless required to enforce this Agreement. Although nothing in this Agreement shall be construed to limit any legal right Plaintiff may have with respect to filing with or participation in investigations conducted by the EEOC or the Occupational Safety and Health Administration ("OSHA"), Plaintiff agrees to waive any right she may have to benefit in any manner from any relief, whether monetary damages, reinstatement or other relief or remedies, arising out of any Claim, including, without limitation, any complaint, charge, claim or proceeding conducted by the EEOC or OSHA. Plaintiff represents and warrants that as of the Effective Date, she has not filed any further or additional complaint, charge or lawsuit against Defendants with any government agency or any court and agrees not to file any such complaint, charge or lawsuit in the future.

  (c) Notwithstanding the foregoing provisions, nothing in this Agreement shall prevent Plaintiff from commencing an action or proceeding to enforce this Agreement, to bring claims that may not be released or waived as a matter of law, and/or for claims that may arise in the future. Plaintiff covenants and represents that as of the Effective Date: (i) she has filed no claim for worker's compensation benefits arising out of her employment with Defendants; (ii) she has not served or provided Defendants with notice of any worker's compensation claim as provided under N.J.S.A. 34:15-17; and (iii) she is unaware of the existence of any unasserted claim

for worker's compensation benefits relating from her employment with Defendants and has no intention of filing for such benefits unless a workplace injury or illness shall hereafter become evident.

(d) (i) As a further condition precedent to payment of the Settlement Amount and, if applicable, Plaintiff agrees to provide Defendants with complete, accurate, and up-to-date information regarding her Medicare eligibility status. Plaintiff also will provide any and all information required to verify her Medicare eligibility status and to facilitate and meet its reporting obligations under 42 U.S.C. § 1395y(b)(8). Such information shall be limited to information specifically required by Medicare reporting obligations, and shall be kept strictly confidential and used solely for Medicare compliance purposes) (collectively, "Confidential Information").

(ii) Notwithstanding any other provision of this Agreement, any prior confidentiality agreement between or among any of the Parties, or any confidentiality or protective order entered by any Court, any Party may use Confidential Information for purposes of complying with reporting and reimbursement obligations under the Medicare Secondary Payer statute and the Medicare, Medicaid, and SCHIP Extension Act of 2007 or for addressing any allegation or claim asserting any reporting violations, penalties, or reimbursement liabilities, and may disclose Confidential Information to the Department of Health and Human Services, the Centers for Medicare & Medicaid Services ("CMS"), and their representatives and contractors, for such purposes. To the extent the permission of any Court or a modification of any confidentiality order or protective order is needed to implement the purposes of this provision, each Party agrees to cooperate in seeking such permission or modification.

(iii) Plaintiff represents and warrants that she is not Medicare eligible and that Medicare has not made any conditional payments for medical services or products received by her (pursuant to U.S.C. § 1395y(b) and the corresponding regulations) and related to the event(s) giving rise to this Agreement. Further, Plaintiff represents and warrants that if any conditional payments related to the event(s) giving rise to this settlement are or have been made by Medicare, then within sixty (60) days of the execution of this Agreement, Plaintiff shall reimburse Medicare for such conditional payments as required by Medicare Secondary Payer law, including Medicare regulations at C.F.R. §411.24(g) and (h). The Parties agree that all representations and warranties made herein shall survive settlement.

(iv) The Parties agree that, in the event of a breach of the representations and warranties made by Plaintiff regarding Medicare payments, Defendants' sole remedy shall be to set off any remaining payments due Plaintiff under the terms of this Agreement up to the total amount of any conditional payments unpaid by Plaintiff and related to the event(s) giving rise to this settlement.

(v) Plaintiff, on behalf of herself and her representatives, agrees to indemnify and hold harmless Defendants against any loss, cost, expense, or liability imposed upon or incurred by either arising from, relating to or concerning Medicare conditional payments related to the accident, injury, or illness giving rise to this settlement, up to the amount of the settlement payment received by Plaintiff.

(vi) Each Party has been advised by counsel before signing this Agreement and has relied upon advice of such counsel with respect to all aspects of this Agreement, including but not limited to the Parties' respective obligations (if any) to reimburse Medicare for conditional payments related to the accident(s), injury(ies), or illness(es) giving rise to this settlement. It is understood and agreed that no mistake of law or mistake of fact made by any Party, including but not limited to any mistake with respect to any obligation to reimburse Medicare for conditional payments, shall constitute a basis for rescission or reformation or render any portion of this Agreement void or voidable.

(vii) This settlement is based upon a good faith determination of the Parties to resolve a disputed claim. The Parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The Parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

(viii) While it is impossible to accurately predict the need for medical treatment, this settlement is based upon a good faith determination of the Parties in order to resolve a disputed claim. The Parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to shift responsibility of treatment to Medicare pursuant to 42 U.S.C. Sec. 1395y(b). The Parties acknowledge and understand that any present or future action or decision by CMS or Medicare on this settlement, or Plaintiff's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this liability settlement.

5. Acknowledgments and Affirmations. (a) Plaintiff affirms and acknowledges that as of the Effective Date of this Agreement (see ¶6(d) infra), she has not been denied any leave to which she claims to have been entitled under the FMLA or any similar leave laws. Finally, Plaintiff warrants and affirms that she has no known workplace injuries or occupational diseases.

(b) By signing this Agreement and General Release, Plaintiff acknowledges and intends that it shall be effective as a bar to each and every one of the Claims hereinabove mentioned or implied, with exception of those noted above. Plaintiff expressly agrees that this General Release shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected Claims (notwithstanding any state statute that expressly limits the effectiveness of a general release of unknown, unsuspected and unanticipated Claims), if any, as well as those relating to any other Claims hereinabove mentioned or implied. Plaintiff acknowledges and agrees that this waiver is an essential and material term of this General Release and that without such waiver, Defendants would not have agreed to pay the Settlement Amount hereunder. Plaintiff further agrees that in the event she should seek to recover against Defendants in any Claim brought by a governmental agency on her behalf, this General Release shall serve as a complete defense to such Claims.

6. The Age Discrimination in Employment Act (the "ADEA").

(a) Release of ADEA Claims. Upon the expiration of the revocation period discussed below, and in consideration of the benefits to be paid to Plaintiff under this Agreement,

Plaintiff, on behalf of herself and her heirs, executors, spouse, administrators, family members, assigns, agents and representatives, waives, unconditionally releases, and completely and forever discharges, each of the Releasees from any and all claims which Plaintiff has, may have, or may have had under the Age Discrimination in Employment Act, which claims are sometimes called "ADEA Claims" in this Agreement. The language in the preceding sentence means that if Plaintiff signs this Agreement and allows the seven (7) day revocation period discussed in paragraph (d) below to pass without revoking this Agreement, in writing, Plaintiff will have irrevocably waived and released any and all ADEA Claims. This Agreement does not operate to waive or release any claims in Plaintiff's favor which may arise under the ADEA after the expiration of the revocation period. As a result, Plaintiff will not be able to recover any damages of any type from Defendants, or any other Releasee for any age discrimination that may have been committed in connection with Plaintiff's employment. Plaintiff understands and agrees that the sum that is being paid under paragraph 1 and the other benefits to be provided to her hereunder are intended to be, and are, separate and adequate consideration for her release of all claims to which this Agreement may apply, including ADEA Claims which are waived and released under this paragraph.

(b) <u>Plaintiff Acknowledgment</u>. Plaintiff acknowledges that she fully understands the meaning and consequences of the terms of this paragraph. Plaintiff acknowledges that she has been advised, in writing, to consult an attorney prior to executing this Agreement.

(c) <u>Review Period</u>. Plaintiff acknowledges that she was given, and has had, a period of not less than 21 days within which to consider this Agreement. Plaintiff further acknowledges that if she executed and delivered this Agreement prior to the expiration of the 21 day review period, she did so entirely voluntarily, and without any coercion or improper inducement by Defendants, or any other Releasees, or any of their representatives or agents.

(d) <u>Revocation Period</u>. Plaintiff understands and expressly acknowledges that she has a period of seven (7) full days after the date when she signs this Agreement to revoke this Agreement. Plaintiff may revoke this Agreement by delivering written notification to Defendants consistent with ¶15 below, at any time prior to, or through, the seventh full day after Plaintiff signs this Agreement. If Plaintiff properly revokes this Agreement, the Agreement will not be effective and enforceable, and Plaintiff will not receive the benefits provided for hereunder. If Plaintiff does not properly revoke this Agreement, this Agreement shall be binding and enforceable beginning on the 8th day after she signs this Agreement (the "<u>Effective Date</u>").

7. <u>Representations and Warranties</u>. Each Party makes the following representations and warranties to the other Parties as of the date hereof:

(a)   This Agreement has been duly executed and delivered by such Party;

(b)   This Agreement will, upon execution and delivery, constitute, legal, valid, and binding obligations of such Party, enforceable against them in accordance with the terms hereof and the law;

(c)   The execution, delivery and performance of this Agreement by such Party does not constitute any breach of, conflict with, or constitute a default under (i) any law, (ii)

its charter, organizational, or governance documents, or (iii) the terms of any material agreement to which it is a party;

(d)  Such Party has not sold, assigned or otherwise transferred to any third party any interest it may have in any claims released herein;

(e)  Such Party has had an opportunity to review this Agreement, that they have in fact read this Agreement and/or it has been read to them, and that they know and understand the full contents and the binding effect thereof and to obtain independent legal counsel to review this Agreement;

(f)  That no other Party or any agent or attorney of any other Party, or any person, firm, corporation, partnership, limited liability company or any other entity has made any promise, representation or warranty, whether express, implied, or statutory, not contained or referred to herein, to induce the execution of this Agreement;

(g)  Such Party has not executed this Agreement in reliance upon any promise, representation or warranty, whether express, implied or statutory, not contained or referred to herein;

(h)  Such Party has relied upon the advice of its respective counsel, which is counsel of such Party's own choice, and its counsel has explained the terms of this Agreement to such Party to its satisfaction; and

(i)  Such Party has consciously, freely and voluntarily entered into this Agreement.

8.  <u>No Presumption Against Drafter</u>.  The Parties hereto agree that the terms and language of this Agreement were the result of negotiations between the Parties.  In the event any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

9.  <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties hereto and supersedes all prior negotiations, agreements, and understandings, both oral and written, among the Parties hereto concerning the subject matter hereof.

10.  <u>Amendments</u>.  This Agreement may not be amended, supplemented, or modified in any way, except by an amendment in writing and signed by authorized representatives of the Parties and except as otherwise provided herein.

11.  <u>Each Party to Bear its Own Costs</u>.  Except as specifically set forth herein, each Party shall bear its own expenses incurred up to and including the Effective Date hereof, including, without limitation, costs, disbursements and attorneys' fees for the Action and the negotiation, preparation and execution of this Agreement.

12.  <u>Severability</u>.  If any provision of this Agreement is held to be invalid, void or

10

unenforceable, the remainder of the provisions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

      13.      <u>Waivers</u>.  No waiver of any provision of this Agreement shall be effective unless set forth in a written instrument signed by all the Parties to this Agreement.  No failure or delay by a Party in exercising any right, power or remedy hereunder shall operate as a waiver, nor shall any partial waiver preclude any further exercise of any other right, power or remedy not expressly waived as required herein. No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence. Waiver of any one provision, or portion thereof, shall not be deemed to be a waiver of any other provision herein.

      14.      <u>Governing Law; and Jurisdiction</u>. The Parties agree and consent that (i) this Agreement shall be governed by and construed according to the laws of the State of New Jersey, without regard to the conflict of laws provisions thereof; and (ii) each of the Parties irrevocably and unconditionally submits to adjudicate any and all disputes hereunder solely in accordance with the terms of ¶21 *infra* for any dispute arising out of or concerning this Agreement to the exclusion of all other forums.

      15.      <u>Notices</u>.  All notices, requests, demands, directions, and other communications provided for hereunder (excepting and subject to those made under ¶18 shall be in writing, delivered to the applicable Party at the address of such Party's counsel as provided herein below (or to such other address(es) reasonably and duly provided in writing to the other Party) via express courier. Each such notice, request, demand, direction or other communication shall be deemed given upon such notice being emailed and deposited into the custody and control of such express courier:

      If to Plaintiff:      Stillman Legal, P.C
                            42 Broadway, 12th Floor
                            New York, New York 10004
                            Attention:  Lina Stillman, Esq.

      If to Defendants:      Erdal Employment Law, LLC
                            25 Pompton Avenue, Suite 101
                            Verona, New Jersey 07044
                            Attention:  Erdal Turnacioglu, Esq.

      16.      <u>Counterparts</u>.  This Agreement may be signed in any number of counterparts, each of which shall be deemed an original with the same effect as if the signatures thereto and hereto were upon the same instrument.  Delivery of an executed counterpart of this Agreement by email shall be effective as delivery of a manually executed counterpart of this Agreement. Imaged Signatures in a standard format such as Acrobat or TIF, with such delivery shall be effective and binding as if it were an original.  The Parties acknowledge and agree that after execution and delivery or email, additional copies of this Agreement may be circulated for signature so that each Party will ultimately retain a fully executed original.  The circulation of the additional copies for

original signatures shall in no way diminish or affect the binding effect of the Agreement previously signed in counterparts and delivered or email.

17. <u>Captions and Headings</u>. Descriptive captions and headings in this Agreement are for convenience only and shall not control or affect the meaning or construction of any of the provisions of this Agreement.

18. <u>Confidentiality Obligations.</u> The Parties agree that Federal law permits Plaintiff to agree to maintain as strictly confidential the amount of the Settlement Payment, and that the provisions of the National Labor Relations Act do not apply to prohibit confidentiality regarding that subject. Accordingly, except as required by law, Plaintiff will not disclose the amount of the Settlement Payment to anyone except her spouse, attorney, accountant, tax or financial advisor, or as required by law or court order, and will make reasonable efforts to maintain confidentiality when making permitted disclosures. Plaintiff shall make reasonable efforts to ensure confidentiality is maintained by those to whom disclosure is permitted hereunder. In addition, the Parties agree that except as permitted by N.J.S.A 10:5-12.8 concerning the details of Plaintiff's wage and hour claims, Plaintiff agrees to maintain as confidential the amounts paid by Defendants. Plaintiff expressly acknowledges and understands that Defendants would not have entered into this Agreement without her promise to keep the other information identified hereinabove strictly confidential. However, Plaintiff and Defendants shall be free to reveal the terms of this Agreement to any local, state or federal taxing authorities or if compelled by court order or subpoena. In the event Plaintiff is served with a subpoena or other form of compulsory process to compel disclosure hereunder, Plaintiff shall provide Defendants with prompt written notice thereof consistent with ¶15 to permit Defendants a reasonable period of time to move to quash or respond to such request if Defendants so desire.

In the event that any portion of the confidentiality provisions in this Agreement is judicially declared to be void or inapplicable, any remaining enforceable confidentiality obligations shall continue to apply to the maximum extent permitted by law.the parties nevertheless agree to keep the Settlement Amount strictly confidential and not to disclose that aspect of this Agreement in any way.

ALTHOUGH THE PARTIES HAVE AGREED TO KEEP CERTAIN INFORMATION CONFIDENTIAL AS SET FORTH ABOVE, INCLUDINGE THIS SETTLEMENT AMOUNT AND CERTAIN BUSINESS INFORMATION, SUCH A PROVISION IN AN AGREEMENT IS UNENFORCEABLE AGAINST THE EMPLOYER IF THE EMPLOYEE PUBLICLY REVEALS SUFFICIENT DETAILS OF THE CLAIM SO THAT THE EMPLOYER IS REASONABLY IDENTIFIABLE.

19. Mutual <u>Non-disparagement</u>. Plaintiff agrees that she will not make any knowingly false statements about Defendants that would constitute defamation under applicable law. Nothing in this provision shall restrict Plaintiff's rightts so make truthful statements about her employment experiences or to engage in protected activities under applicable laws. This provision shall not be deemed to limit Plaintiff's (i) right of access to, participation or cooperation with any government agency or (ii) right to enforce this Agreement. Moreover, nothing in this Agreement or this Section

is intended, nor shall it be interpreted, to limit or prevent Plaintiff from engaging in protected concerted activity under the National Labor Relations Act.

Defendants agree that in response to any request for a reference, Defendants shall provide only Plaintiff's dates of employment and job title, and shall not make any negative or disparaging statements about Plaintiff's employment.

20. <u>No Re-Hire</u>; Plaintiff agrees that she will not apply to Defendants for future employment, or for the provision of services as an employee, independent contractor or otherwise following execution of this Agreement. If Plaintiff does seek to obtain a position with the Defendants, this Agreement shall constitute good cause and a legitimate, non-discriminatory and non-retaliatory basis for such parties, among other things: (a) to refuse to accept an application for employment or proposal for retention from Plaintiff; (b) to refuse to interview Plaintiff; (c) to refuse to hire or retain Plaintiff and (d) in the event Plaintiff is somehow rehired or retained in contravention of this Agreement, to terminate Plaintiff's employment.

21. <u>Enforcement of Agreement</u>. The Parties stipulate, acknowledge and agree that any disputes over the interpretation, enforcement or applicability of this Agreement shall be brought exclusively in United States District Court, District of New Jersey. In the event that either party breaches their obligations under the Agreement, the Parties agree that the non-breaching party shall have the right to seek injunctive relief in addition to bringing claims for monetary damages incurred by the non-breaching Party as a result of such breach and violation.

23. <u>Successors</u>. This Agreement shall be binding on and inure to the benefits of the Parties, their respective administrators, spouses, agents, assigns, attorneys, beneficiaries, dependents, executors, heirs, insurers, representatives and successors.

24. <u>Inadmissible Evidence</u>. This Agreement may only be used as evidence in a subsequent proceeding in which either Plaintiff or Defendants allege a breach ofis th Agreement, seek to enforce its terms, or as otherwise required by law or court order.

25. <u>No Reliance</u>. Plaintiff represents and acknowledges that in executing this Agreement, she has the benefit of her own attorney(s)and she does not rely and has not relied upon any representation or statement made by Defendants or their attorneys with regard to the subject matter, basis or effect of this Agreement, other than as set forth in this Agreement.

IN WITNESS HEREOF, THE PARTIES HAVE EXECUTED THIS AGREEMENT ON THE DATES PROVIDED BELOW.

BY SIGNING THIS AGREEMENT PLAINTIFF ACKNOWLEDGES THAT:

A. SHE HAS READ THIS AGREEMENT;
B. SHE UNDERSTANDS THIS AGREEMENT AND KNOWS SHE IS GIVING UP IMPORTANT RIGHTS;
C. SHE AGREES WITH EVERYTHING IN THIS AGREEMENT;
D. SHE IS ADVISED TO CONSULT WITH AN ATTORNEY OF HER CHOOSING PRIOR TO EXECUTING THIS AGREEMENT;

E.   SHE HAS BEEN GIVEN A PERIOD OF 21 CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT; AND
F.   SHE HAS SIGNED THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

BY SIGNING THIS AGREEMENT DEFENDANTS ACKNOWLEDGE THAT:

A.   THEY HAVE READ THIS AGREEMENT;
B.   THEY UNDERSTAND THIS AGREEMENT AND KNOW THEY ARE GIVING UP IMPORTANT RIGHTS;
C.   THEY AGREE WITH EVERYTHING IN THIS AGREEMENT;
D.   THEY ARE ADVISED TO CONSULT WITH AN ATTORNEY OF THEIR CHOOSING PRIOR TO EXECUTING THIS AGREEMENT; AND
E.   THEY HAVE SIGNED THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

as of IN WITNESS WHEREOF, the Parties have each read, understood, and executed this Agreement the date indicated below their respective signatures.

ANA CARDOSO

Dated: 8/18/2025, 2025

CEZAR MIZRAHI

*cezar mizrahi*

Dated: 9/4/2025, 2025

OLIVIA ROSE ENTERPRISES, INC.

*cezar mizrahi*

By: cezar mizrahi
Title: owner

Dated: 9/4/2025, 2025